Eliot HEIFETZ, Petitioner,

v.

Irving TUGENDRAJCH, a/k/a Israel
Arye Tugendrajch, Respondent.

No. 82 Civ. 1243.

United States District Court,
E. D. New York.

June 21, 1982.

Grossman, Zafrin, Weiss & Kozupsky, New York City, for petitioner; Mark Zafrin, New York City, of counsel.

Solerwitz, Solerwitz & Leeds, Mineola, N. Y., for respondent; Alan Kachalsky, Mineola, of counsel.

BARTELS, District Judge.

Petitioner Eliot Heifetz instituted a special proceeding in the New York State Supreme Court, Kings County, pursuant to CPLR § 7510 by an application to confirm an arbitrator's award granted on April 19, 1982. On May 3, 1982, respondent Irving Tugendrajch removed that petition to this court pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1332. Petitioner now moves this court pursuant to 28 U.S.C. § 1447(c) to remand the petition to the state court on the ground that the case does not satisfy either the case or controversy requirement of Article III of the United States Constitution or the amount in controversy requirement of 28 U.S.C. § 1332. There is no doubt that such a case is removable under 28 U.S.C. § 1332 based on diversity even though it is a special proceeding under CPLR § 7510. *Minkoff v. Budget Dress Corp.*, 180 F.Supp. 818 (S.D.N.Y.1960); *Minkoff v. Scranton Frocks, Inc.*, 172 F.Supp. 870 (S.D.N.Y.1959); and *Hetherington & Berner v. Melvin Pine & Co.*, 256 F.2d 103 (2d Cir. 1958). Moreover, concerning the amount in controversy, the award plainly involves more than $10,000 exclusive of interest and costs. *See Davenport v. Proctor & Gamble Manuf. Co.*, 241 F.2d 511 (2d Cir. 1957). The only question remaining is whether the state court, in which the suit originated, had jurisdiction of the special proceeding. Because of lack of state court jurisdiction, this court holds that the case was removed improvidently and accordingly remands the same to the state court for disposition.

## I

Petitioner and respondent were apparently partners in the business of investing in commercial real estate. Late in 1980 the partnership was dissolved. On March 29, 1981, both parties entered into an "agreement," entitled "Rabbinical Arbitration Certificate," which in its relevant part read:

Our signatures down below should testify for us ... that we the undersigned accepted upon us, as Rabbinical Judges: Rabbi Asher Babad ... chosen by the plaintiff Israel Arye Tugendrajch and Rabbi Menachem Zav Schick ... chosen by the Defendant Mr. Elieser Heifetz; and the deciding third Rabbi Zvi Meir Ginsberg ... who was chosen by the above two Rabbinical Judges to decide between us, according to their Judgment.

We herewith certify, that we accepted upon us to fulfill the Rabbinical decree, which will be issued by the above Rabbinical Court, according to the laws of our holy Torah, to the best understanding of the above Rabbinical Judges, without any contest whatsoever, with no appeal to any other Jewish Rabbinical Courts or the Courts of the Country.

All this was done with the required Authorization Ceremony and not as a plain promise or a make-believe Contract, but with the best possible validity.

We are coming to sign for this today on the 23rd day of Adar B 5741 (March 29, 1981) here at Brooklyn.

Sometime before May 20, 1981, a dispute arose between the parties apparently regarding their respective interest in certain real estate or partnership transactions. In accordance with their "agreement," they submitted such disputes, whatever they may have been, to the arbitration panel. On May 20, 1981, an award was entered by the Rabbis which, in its relevant part, provided that respondent had the "right and choice" to sell to petitioner, Elmwood Shopping Center on Staten Island for $410,000 and that in the event the respondent refused to sell or the petitioner refused to buy, the defaulting party would have to pay the other party $10,000.

Apparently dissatisfied with the award, the respondent, on March 2, 1982, brought a separate action against petitioner in the United States District Court for the Southern District of New York on issues allegedly related to those addressed and presumably covered by the arbitration award. CPLR § 7514 provides that once an arbitration award has been confirmed pursuant to CPLR § 7510 and judgment entered thereon, it may act as a bar to further litigation or arbitration. *See* 8 Weinstein-Korn-Miller, *New York Civil Practice,* ¶¶ 7514.02–7514.03. Accordingly, petitioner filed this petition for confirmation in the New York Supreme Court, Kings County.

## II

Removal of cases is governed by 28 U.S.C. § 1441, which provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

■ Arbitration proceedings in general, and petitions to confirm arbitrators' awards in particular, have always been considered properly removable where they satisfy the prerequisites of 28 U.S.C. § 1441(a). *Minkoff v. Budget Dress Corp., supra; Minkoff v. Scranton Frocks, Inc., supra; Hetherington & Berner v. Melvin Pine & Co., supra; Reed & Martin, Inc. v. Westinghouse Electric Corp.,* 439 F.2d 1268 (2d Cir. 1971). They are "civil actions" which if "brought in a State court" may be removed to federal district court when original federal jurisdiction otherwise exists. Petitioner's arguments that the petition involves a proceeding that is inherently local or purely administrative, and therefore not removable, are without merit. *See Minichiello Realty Assoc., Inc. v. Britt,* 460 F.Supp. 896 (D.N.J. 1978), *affirmed without opinion,* 605 F.2d 1196 (3d Cir. 1979); *Village of Walthill, Neb. v. Iowa Electric Light & Power,* 228

F.2d 647 (8th Cir. 1956). The claim that arbitration proceedings are not cases or controversies under Article III of the United States Constitution is equally untenable. However, as heretofore stated, the threshold question is whether there was a case brought in the Supreme Court over which that court had jurisdiction. Obviously, if the state court had no jurisdiction it follows that the federal court can acquire none upon removal. *Cole v. United States*, 657 F.2d 107, 109 (7th Cir.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 278 F.Supp. 52, 54 (S.D. N.Y.), *affirmed*, 396 F.2d 300 (2d Cir. 1967).

To determine whether the state court had jurisdiction of the petition to confirm, the requirements of § 7501 of the CPLR must be satisfied. This section specifically provides that:

A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award.

According to this provision, a written agreement to arbitrate is necessary in order to confer jurisdiction upon the state court under Article 75 of the CPLR. In this case the only written agreement offered under Article 75 is the one entitled "Rabbinical Arbitration Certificate," which merely describes the members of a potential arbitration panel without stating what disputes, past, present or future, are to be arbitrated and what purpose the so-called arbitration panel is to serve. Nor do we have any inkling in the Rabbinical agreement as to the nature and extent of the issues which the parties agreed to submit to arbitration. In fact, there is no "written agreement to submit any controversy . . . to arbitration." The fact that § 7510 of the CPLR provides that the court shall confirm an award unless it is vacated or modified on the grounds specified in § 7511 of the CPLR does not create jurisdiction in the state court to en-

tertain such a proceeding in the absence of a written agreement to arbitrate. *See Matter of Hellman [Wolbron]*, 31 App.Div.2d 477, 298 N.Y.S.2d 540 (1st Dept. 1969); *Electric Steel Elevator v. John Kam Malting Co.*, 112 App.Div. 686, 98 N.Y.S. 604 (4th Dept. 1906); *Matter of Buckley [Lipman]*, 223 N.Y. 539, 119 N.E. 1033 (1918).

While there are decisions which have held that a party who participates in arbitration proceedings may not challenge the award even in the absence of a valid arbitration agreement, see *Matter of National Cash Register Co. [Wilson]*, 8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d 302 (1960); *Matter of Bay Iron Works [Eisenstein]*, 17 App. Div.2d 804, 232 N.Y.S.2d 746 (1st Dept. 1962); *Matter of Ingardia Const. [Dyker Bldg. Co.]*, 14 App.Div.2d 23, 216 N.Y.S.2d 978 (1st Dept. 1961), *affirmed*, 11 N.Y.2d 726, 225 N.Y.S.2d 973, 181 N.E.2d 225 (1962), those decisions are inapposite since they are supported by underlying written agreements.

In determining jurisdiction upon removal, the court must assess the state court's jurisdiction as defined by state law, which in this case seems to clearly require a written agreement. As a matter of fact, the only evidence here that there was some type of agreement to arbitrate this dispute, or any dispute for that matter, is the inference to be drawn from the vague and laconic award of the Rabbis. This is insufficient because such an agreement was at most oral and undefined.

The court accordingly remands the petition to confirm the arbitrator's award to the state court for such disposition as it deems advisable.

SO ORDERED.